In re Michael YOLICH, Debtor.

**HERITAGE INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

Michael YOLICH and Collette Moran, Defendants.

Bankruptcy No. 81–01495–BKC–JAG.
Adv. No. 81–0690–BKC–JAG–A.

United States Bankruptcy Court, S.D. Florida.

May 28, 1982.

Howard S. Gaines, Fort Lauderdale, Fla., for defendants.

Chad P. Pugatch, Cooper, Shahady, Frazier & Pugatch, M. Daniel Hughes, Chappell, Brandt & Gore, P.A., Fort Lauderdale, Fla., Melvin Dick, Des Plaines, Ill., for plaintiff.

### FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding was tried on the amended complaint objecting to the discharge of defendant-debtor Michael Yolich (C.P. No. 19) and defendant's answer to amended complaint (C.P. No. 29). Defendant Collette Moran was subsequently dismissed from the complaint, as was plaintiff's request that a transfer to Collette Moran be avoided. Plaintiff, a creditor of the debtor, seeks to prevent the discharge of the debtor under 11 U.S.C. § 727(a)(2)(A), (a)(3), and (a)(4)(A). The complaint is centered on three acts of defendant: His transfer of his Wisconsin property and his failure to show that transfer on the schedules, his failure to list his condominium as an asset on his schedules, and his failure to keep records in his previous business. The court concludes that defendant's discharge should be denied on the basis of his treatment of the Wisconsin property.

Prior to January, 1980, Yolich resided in Illinois. He was in business as a piping contractor, constructing water and sewer improvements in new real estate developments. Plaintiff issued a payment

and performance bond for the performance of the corporation Pro-Mech Systems, Inc., (Plaintiff's Exhibit No. 1) and the defendant personally indemnified the plaintiff (Plaintiff's Exhibit No. 2). When Pro-Mech failed to complete construction, plaintiff was forced to make payments under the bond totalling over $50,000.

Collette Moran is defendant's sister. Both the debtor and Ms. Moran testified that, in an attempt to save the business, the debtor requested and eventually borrowed $6,000 in cash from Collette Moran. They testified that the debtor typed the written agreement dated October 4, 1979 evidencing this loan (Plaintiff's Exhibit No. 6). While the circumstances under which Ms. Moran obtained the funds were somewhat unusual, and plaintiff argues that the testimony regarding the circumstances surrounding the loan is inconsistent and not credible, the court finds that this loan was, in fact, made by Collette Moran to Michael Yolich. The loan was non-interest bearing and although payments on principal were to commence immediately, the debtor never made any payments to his sister.

During approximately the same period, Yolich was undergoing a non-amicable divorce. Under the divorce settlement, defendant's wife received the couple's residence in Lake Villa, Illinois and defendant received a one-bedroom condominium in Schaumberg, Illinois and a number of acres of undeveloped rural property near Goodrich, Wisconsin. The deed to Yolich from his ex-wife for the Wisconsin property was delayed following the divorce and the defendant testified that his attorney in the divorce action was involved in a disciplinary proceeding and there was confusion in the completion of the documentation. That deed to Yolich was executed on December 9, 1980 (Plaintiff's Exhibit No. 4). On April 29, 1981 defendant deeded the same property to Collette Moran (Plaintiff's Exhibit No. 5). Both deeds were recorded on May 22, 1981. Defendant testified that it was his unilateral decision to deed the property to his sister because he had been unable to pay her in any other way. She testified that she was very upset at his non-payment and

had called him numerous times and they became on unfriendly terms over it. Both testified that Collette Moran would rather have had the money than the property and that she has made no attempt to sell it.

The only evidence of the value of the Wisconsin property was the testimony of defendant who stated that it was purchased for approximately $7,000 in 1973 and that a year and one-half or so ago it "hadn't increased that much" and was worth about $7,500. Defendant's schedules made no reference to the Wisconsin property or to loan and the transfer to his sister although the transfer occurred in April, 1981 and the bankruptcy petition was filed in September, 1981.

The court concludes that the omission of any reference in his schedules to this transfer was a deliberate omission. For at least several years prior to the filing of the bankruptcy, defendant had an ownership interest in only three parcels of real property. Rights to the property were strongly litigated during the divorce and subsequently there was either litigation or threatened litigation by the defendant's ex-brother-in-law regarding the Wisconsin property. In view of those circumstances, it is not reasonable to believe that the defendant overlooked the transfer in preparing his schedules. Even by defendant's own testimony the property is worth substantially more than the debt he sought to repay by the transfer. He himself admits that the decision to transfer it was a unilateral one, and there is no question that his sister did not particularly want the property. In view of these combined circumstances, including the failure to list the transfer on the bankruptcy schedules, it must be concluded that the defendant made the transfer with the intent to hinder, delay or defraud his creditors within one year before the date of the filing of the petition. The defendant's discharge must be denied under § 727(a)(2)(A) and under (a)(4)(A).

The court does not find that discharge should be denied for defendant's failure to list the Schaumberg condominium

as an item of property. Reference was made to it as property which had been foreclosed upon. Although the mortgagee had done nothing more than send a warning letter, and the debtor is in an occupation where he must be very much aware of the procedures in real estate foreclosures, it is possible that in his own mind he considered the property "gone", especially since he must have known that he was not in a financial position to save it. Similarly the court concludes that the discharge should not be denied on the grounds that defendant failed to keep adequate records. There was no evidence of concealment or destruction of records and although his business records were apparently insufficient and may have been in themselves a contributing factor to the bankruptcy, the court concludes that the insufficiency was not such as to deny the debtor his discharge on those grounds.

Pursuant to Bankruptcy Rule 921(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.